Syllabus.

justice have extended it very far in comprehending not only parents, but other relatives in loco parentis; but they have always adhered to the nature of the action; have never extended it to cases where at the time of the injury done the person complaining was not, in contemplation of law, either enjoying the services of others, or having a right to retain them. . . . . The lying-in expenses, the support of the daughter, the mental pain she may have sustained, do not of themselves give the cause of action, although in truth the latter forms the principal feature in giving damages."

This case is decisive that the cause of action is the seduction, and that no new action arises from the subsequent results to the plaintiff. It establishes, therefore, that the cause of action in the present case was complete more than six years prior to the writ, and that the statute of limitations was a bar. The defendant's first point should have been affirmed.

Judgment reversed.

---

## F. H. DODD ET AL. v. H. J. SMITH ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued May 22, 1891—Decided October 5, 1891.

(a) Plaintiffs, the owners of the copyright of E. P. Roe's novels, published a cheap paper edition which they sold to the trade at 50 cts., and a fine cloth-bound edition, sold at $1.50. Defendants bought a " large consignment" of the cheap paper edition, bound the books in cloth in imitation of the plaintiffs' cloth-bound edition, and sold them to the trade at 40 cts. to 45 cts. :

1. When defendants had sold about sixty-six thousand copies, as above, the plaintiffs filed a bill in equity for an injunction restraining their sale of the cheap paper edition, re-bound and re-issued in imitation of the cloth-bound edition published by the plaintiffs, and for an account. A preliminary injunction was properly refused.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 282 January Term 1891, Sup. Ct.; court below No. 273 December Term 1890, C. P. No. 3, in Equity.

On December 24, 1890, Frank H. Dodd and others, trading as Dodd, Mead & Co., filed a bill in equity against Henry J. Smith and others, trading as H. J. Smith & Co., averring:

1. " That they comprise the firm of Dodd, Mead & Co., and are engaged in the occupation of publishers, booksellers, and importers of books in New York city.

2. " That they own and control the copyright of certain books written by Edward P. Roe, now deceased, a citizen of the United States, and that they have published two editions of the said books, one an inferior edition in paper covers, which is sold at retail for fifty cents per volume, the other an edition in cloth covers, stamped with an elaborate and handsome design, which is sold at retail for one dollar and fifty cents per volume.

3. " That the firm of H. J. Smith & Co., publishers and booksellers in the city of Philadelphia, Pa., and the defendants in this suit, recently purchased a large consignment of the cheaper edition of the said works of E. P. Roe, viz., the edition selling at fifty cents per volume, and, with the intent to injure and defraud your orators, re-bound the same in cloth covers, bearing a stamped design so closely resembling the design upon the other and more costly edition of the said works published by your orators, as to deceive an ordinary purchaser, and to cause him to mistake a cheap and spurious imitation for a copy of the genuine best edition.

4. " That the defendants have extensively advertised the books so re-bound and re-issued by them by means of circular letters to their customers, a copy of one of which letters is hereto annexed and marked exhibit A ; and have offered and are offering to sell and are selling the same for a sum so much less than that charged by your orators for the genuine edition, that the book is sold at retail for about sixty cents per copy, so that they have thereby greatly lessened the demand, both on the part of retail dealers and of the public generally, for the said edition, and have thereby deprived and unless restrained by this court will deprive your orators of the profits which they were and are lawfully entitled to make and which

they otherwise would have made, by the sale of the said edition.

5. "That the cloth covers and bindings placed upon the books re-bound and re-issued by the defendants, although resembling in general appearance the covers used by your orators, are of a cheap and flimsy character, with little capacity for wear; and that the reputation of your orators as first-class publishers and bookbinders is likely to be seriously injured by the promiscuous sale of books bound in such a manner, and bearing on them the name of your orators' firm.

" Wherefore your orators stand in need of equitable relief, and pray:

" 1. That an injunction issue, special until hearing and perpetual thereafter, enjoining the defendants, H. J. Smith & Co., their servants, agents, and employees, from selling, exposing for sale, or otherwise attempting to dispose of the edition of the said works of E. P. Roe, which they have fraudulently re-bound and re-issued in imitation of the edition lawfully published and offered for sale by your orators.

" 2. That the defendants may be ordered and decreed to pay to your orators such sum of money as may be determined by your Honors to be a just and equitable compensation for the damages and loss of profits incurred by your orators by reason of the unlawful acts of the said defendants.

" 3. Such further relief," etc.

The circular letter, exhibit A, dated November 29, 1890, addressed by defendants to Edson C. Eastman, Concord, N. H., was as follows:

"Dear Sir: We desire to call your attention to the paper E. P. Roe book bound in cloth, which is an exact copy of the genuine $1.50 edition.

" We have stock of the following titles:

" ' Opening a Chestnut Burr.'

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

" We will supply you the above books, f. o. b. this city, in quantities as follows:

250 or less at 45 cents each, 2 per cent in 10 days,
500 to 1000 " 42½ "　　" 2 "　" " 10 "
1000 and over " 40 "　　"　　net " 10 "

" We believe with your facilities you can handle this special

Arguments.

edition at a handsome profit. You can very easily job them if desired, at 60c. and retail at 75c. We have only a few thousand left, which will be closed out at once; hence will not agree to fill orders received after December 10th.

"We can ship goods upon receipt of order, so that you will have them for Christmas trade.. We consider you the best party in your locality, and if you take quantity will sell no one else. Sample copy will be sent on application.

"We respectfully solicit your attention. Enclosed find stamped envelope for reply."

On January 3, 1891, a motion was made and argued for a special injunction. Among the affidavits read in support of the averments of the bill, was one by S. Edward Pryor, who stated, inter alia, that on December 24, 1890, he visited the place of business of defendants, and bought a "Driven Back to Eden" for forty-five cents; that one of the defendants told him at the time that the defendants had sold in all about sixty-six thousand* copies of that edition of E. P. Roe's books, and that the book bought by the witness was an exact copy of the best edition and the cover was the same: "I asked him how he could sell them for forty-five cents, and he said they bought the paper-bound books, and put a cloth back on them which was exactly like the original."

On January 17, 1891, the court, FINLETTER, P. J., without opinion filed, entered an order refusing the special injunction prayed for. Thereupon, the plaintiffs took this appeal, assigning said order for error.

*Mr. John M. Gest* (with him *Mr. W. P. Gest, Mr. John Sparhawk, Jr.,* and *Messrs. Andrews & Purdy*), for the appellants.

That, (1) a court of equity will protect manufacturers and traders, in the prosecution of their lawful business, by restraining other persons from copying or imitating their trade-marks, trade-names, labels, wrappers, designs, peculiar methods of packing goods, and all other indicia of trade ownership to which they have a right, counsel cited: Browne on Trade-Marks, 50, 51; Croft v. day, 7 Beav. 84; McLean v. Fleming, 96 U. S.

---

* Observe, that the bill did not aver the number of copies sold by the plaintiffs to defendants; only "a large consignment."

Arguments.

245; Hoyt v. Hoyt, 2 Pa. C. C. R. 152;* Perry v. Trufitt, 6 Beav. 66, 73. (2) And not only restrain the violation of a technical trade-mark, but will enjoin a defendant from imitating the appearance of plaintiff's goods, where the imitation is likely to mislead the public, or is a fraud upon the real owner by diverting profits to which he is entitled : Amoskeag Co. v. Spear, 2 Sandf. 606; McLean v. Fleming, 96 U. S. 251; Williams v. Johnson, 2 Bosw. 1; Holloway v. Johnson, 13 Beav. 209. (3) The defendant will not be protected by slight changes in the marks or indicia used by the plaintiff, if a deceptive general resemblance remain : Sebastian on Trade-Marks, 124; Croft v. Day, 7 Beav. 86, 89; Knott v. Morgan, 2 Keen 213; Dixon Crucible Co. v. Guggenheim, 2 Brewst. 321; Amoskeag Co. v. Spear, 2 Sandf. 599; nor can he excuse himself on the ground that he had no fraudulent intent : Millington v. Fox, 3 M. & Cr. 338; Clement v. Maddock, 1 Giff. 98; Amoskeag Co. v. Spear, 2 Sandf. 609; nor, on the ground that the plaintiff does not have an exclusive right : Croft v. Day, 7 Beav. 88; and it is no defence to show that the same name or mark, if used in another manner, would have been lawful : Holloway v. Holloway, 13 Beav. 209; McLean v. Fleming, 96 U. S. 245. (4) Illustrations, further : Howard v. Henriques, 3 Sandf. 725; Winsor v. Clyde, 9 Phila. 513; Coats v. Holbrook, 2 Sandf. Ch. 586; Sawyer v. Horn, 1 Fed. R. 24; Morgan v. Troxell, Cox's Cases, 414; Archbold v. Sweet, 1 Moody & R. 162; Robertson v. Berry, 50 Md. 591 (33 Am. Rep. 328); Mack v. Petter, L. R. 14 Eq. 431; Estes v. Leslie, 29 Fed. R. 91; Estes v. Worthington, 24 Blatch. 371; Estes v. Leslie, 23 Blatch. 476; Estes v. Williams, 22 Blatch. 364; Witthaus v. Wallace, 2 W. N. 610; Marsh v. Billings, 7 Cush. 322; Richardson v. Williamson, 30 L. T., N. S., 746; Gillott v. Kettle, 3 Duer 624; § 173, act of March 31, 1860, P. L. 424.

*Mr. Charles F. Warwick*, for the appellees.

That a special injunction will not be granted unless the plaintiff show a clear right, and immediate and urgent danger of irreparable injury, counsel cited: Bispham's Eq., § 405; Story's Eq. J., § 959, *a*; Grey v. Railroad Co., 1 Gr. 412.

---

* Reversed, Hoyt v. Hoyt, 143 Pa. 623.

PER CURIAM:

This was an appeal from the decree of the Court of Common Pleas No. 3, refusing to grant a preliminary injunction.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.

Mr. Justice MITCHELL noted his dissent.

---

## A. HARTMAN ET AL. v. PENNA. R. CO.

### APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF PERRY COUNTY.

Argued May 26, 1891—Decided October 5, 1891.

In trespass against a railroad company charging negligence resulting in the death of the plaintiff's son while operating a shunting appliance on a shifting engine, there being no evidence to justify a finding that the death of the son was the result of negligence on the part of the defendant it was not error to direct a verdict for the defendant.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 81 July Term 1890, Sup. Ct.; court below, No. 3 August Term 1889, C. P.

On April 11, 1889, Andrew Hartman and Nancy M. Hartman brought trespass against the Pennsylvania Railroad Company. Issue.

At the trial, on April 18, 1890, the case presented was in substance as follows: On the morning of May 29, 1888, it was noticed that one of the upright standards used with the shunting pole of a shifting engine, at the Harrisburg yards of the defendant company, was in bad condition, and the engine was sent to the shops to have the standard repaired. The shunting appliance consisted of two uprights or standards inserted in iron sockets placed in the frame on the rear of the tender, one on each side or corner. Each standard was a little over four